**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DANNY COMER and KATHY COMER**                                                              **PLAINTIFFS**

**v.**                                                          **CAUSE NO.: 1:06CV299-SA-JAD**

**DAVID LINDLEY, individually, and
CITY OF STARKVILLE, MISSISSIPPI**                                          **DEFENDANTS**

<u>**MEMORANDUM OPINION ON SUMMARY JUDGMENT**</u>

Comes now before this Court, Defendants' Motion for Summary Judgment. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

Danny Comer was hired by Shelia Riekhof to perform some minor repairs to her new home. Comer estimated the cost of the work would be around $12,000. Sometime during these minor renovations, Reikhof approached Comer about constructing an addition onto her home. Comer began construction and within ten weeks requested and received over $64,000 from Riekhof allegedly for the work and materials attendant with the construction. During this time, Danny Comer allegedly informed Riekhof that cabinets had been ordered and partially paid for pursuant to a down payment check she issued upon his request in the amount of $2,200. Also, Comer allegedly charged Riekhof for six thousand bricks when, in fact, he only used about half of those in the construction of the addition. When Riekhof refused to pay Comer any more money, he allegedly sent sub-contractors directly to Riekhof to collect payment even though she contends she paid Comer for the services performed by the sub-contractors.

After getting several contractors to come by and inspect Comer's work, Riekhof felt she had been scammed. Riekhof called David Lindley, Chief of Police for the City of Starkville and her

neighbor, for advice on what actions to take. Lindley apparently informed Riekhof to come into the police station and file a report. Lindley then instructed one of his detectives that Reikhof was coming in and assigned him to investigate her claim.

According to Lindley, a proper investigation ensued. Detective Keith Davis and Lindley placed crime scene tape around Riekhof's house in order to secure property within her house that she was afraid would be taken and to deter people from coming into her home. After gathering evidence from sub-contractors and vendors involved in the Riekhof construction, Davis spoke with Lindley regarding further steps to take in the case. Lindley suggested Davis talk to the district attorney regarding the case. District Attorney Forrest Allgood had Riekhof execute an affidavit alleging that Comer committed the crime of false pretenses "by taking money for goods and services that were not provided . . . the sum of [which was] $2,200.00." Davis took the Riekhof affidavit and other evidence gathered to Justice Court Judge Bernard Crump who found probable cause existed to arrest Comer and therefore, signed a warrant for his arrest and set bail for his release at $10,000.

Plaintiff surrendered to authorities on August 18, 2003, and was released on bond the same day. Plaintiff contends that Lindley prohibited him from offering as collateral land he owned in Clay County in lieu of a cash bond. Therefore, Plaintiff asserts, Lindley caused him to post improper and unnecessary bond.

On October 30, 2003, at a preliminary hearing on Comer's false pretense charge, a municipal judge ordered the Starkville Police Department to turn over their reports and files to Comer's counsel. The police department refused, allegedly on the advice of the district attorney. Therefore, the municipal judge dismissed the charges against Comer on the basis of their failure to provide him a copy of the file.

Detective Davis and the district attorney planned to present the Comer case to the grand jury and emphasize more the alleged fraudulent charges for brick, as opposed to cabinets. The evidence showed that Comer charged Riekhof for approximately two thousand more bricks than were actually used on her home. Upon hearing the evidence against Comer, on January 26, 2004, the grand jury returned an indictment against Danny Comer for the crime of false pretenses.

Plaintiff was arrested by the Oktibbeha County Sheriff's Department, but the charges were not pursued as the district attorney filed a Nolle Prosequi on November 3, 2005.

On November 2, 2006, Danny Comer filed this action against David Lindley, individually and in his official capacity as the Chief of Police, and the City of Starkville, for violations of the United States Constitution and state law. Plaintiff brings suit against Lindley, individually and officially, and the City of Starkville under 42 U.S.C. § 1983 for violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, namely false arrest, conspiracy to falsely arrest, excessive bond, and retaliation. The City of Starkville is named a defendant for actions such as malicious prosecution and respondeat superior against the Plaintiff under the Mississippi Tort Claims Act. Kathy Comer also filed a state court cause of action against the Defendants for loss of consortium related to the charges against her husband.

*B. Summary Judgment Standard*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the

3

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*C. Discussion and Analysis*

**42 U.S.C. § 1983**

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983, which states:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…

42 U.S.C. § 1983. Section 1983 alone does not create substantive rights. Dismukes v. Hackathorn, 802 F. Supp. 1142, 1444 (N.D. Miss. 1992). Rather, Section 1983 creates a remedy for violation of federal, constitutional, or statutory rights. Cousin v. Small, 325 F.3d 627, 631 (5th Cir. 2003). Section 1983 was designed to deter state and government actors from abusing their official positions by depriving citizens of their constitutionally protected rights and provides redress for any such

4

deprivation. Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir. 1986). Mere assertions that a defendant violated a plaintiff's rights are insufficient to maintain a Section 1983 claim. Dismukes, 802 F. Supp. at 1444 (citing Easterling v. Glennville, 694 F. Supp. 911, 917 (S.D. Ga. 1986)). To maintain a successful 1983 action, the Plaintiff must prove there has been (1) a deprivation of a federal right (2) that occurred under color of state law, which (3) was caused by a state actor. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004); Phillips v. Vandygriff, 711 F.2d 1217, 1221 (5th Cir. 1983).

According to the Complaint, Plaintiff brings his constitutional claims against David Lindley, in his individual and official capacities, and the City of Starkville. In his response to Defendants' Motion for Summary Judgment, Comer concedes his First and Fifth Amendment claims. Therefore, the Court analyzes Plaintiff's Fourth, Eighth and Fourteenth Amendment claims against David Lindley and the City of Starkville below.

*Municipal Liability*

Municipal liability results if the deprivation of constitutionally protected rights was inflicted pursuant to an official policy or custom. McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 313 (5th Cir. 2002). Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Monell v. Dep't of Soc. Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. Peters v. City of Biloxi, 57 F.Supp.2d 366, 376 (S.D. Miss. 1999); see Snyder v.

5

Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998); Piotrowski, 237 F.3d at 580 (stating that these two requirements "must not be diluted."). In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations." Monell 436 U.S. at 691, 98 S. Ct. 2018.

The three requirements for municipal liability detailed above are necessary in order to distinguish between isolated violations committed by local employees and those violations which may be committed by the government itself. Piotrowski, 237 F.3d at 578. Therefore, municipalities may not be held liable for acts of lower level employees but may be held liable for constitutional violations committed pursuant to an official policy or custom. Id. at 578. In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right, he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. Id. at 580.

The Plaintiff admits in his Response to Summary Judgment [51] that he "cannot establish a basis for municipal liability under 42 U.S.C. § 1983" and "cannot establish deliberate indifference on the part of the City of Starkville." As such, his claim under 42 U.S.C. § 1983 against the City of Starkville must be dismissed.

*Official Capacity*

In West v. Atkins, the United States Supreme Court stated that "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." 487 U.S. 42, 50, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). The Plaintiffs in this action have brought suit against the Defendants in their individual, as well as

6

their official capacity. In Kentucky v. Graham, the Supreme Court explained the difference between individual capacity claims and official capacity claims:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against that entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgement in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (internal citations omitted). Therefore, a suit against a governmental employee in their official capacity is "no different from a suit against the State itself." Will, 491 U.S. at 71, 109 S. Ct. 2304. Therefore, if suit cannot be maintained under Section 1983 against the City of Starkville, Lindley in his official capacity is entitled to those same defenses.

In the present case, the Plaintiff asserts that the Chief of Police deprived him of his constitutional right against unreasonable search and seizure. Plaintiff has failed to produce evidence that Lindley was an official policy maker with an official policy, or that there was a violation of his constitutional rights. Thus, Plaintiff's § 1983 claim against Lindley in his official capacity must also be dismissed.

*Individual Capacity*

In Hafer v. Melo, the Supreme Court unanimously held that state officials sued for damages in their personal capacities are "persons" within the meaning of § 1983, even when the claim is based upon the carrying out of official responsibilities. 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301

7

(1991). However, officials sued under § 1983 in their personal capacities may be able to assert a qualified immunity defense.

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Under this test, an official who acted unconstitutionally, but did not violate clearly established federal law will be found to have acted in an objectively reasonable manner and will be protected from personal liability by qualified immunity.

Although qualified immunity is an affirmative defense, see Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980), once the defendant pleads qualified immunity, the burden shifts to the plaintiff to show that the right allegedly violated was clearly established at the time of the challenged conduct. See Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997) (where § 1983 defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, plaintiff has the burden to rebut qualified immunity defense by establishing the violation of clearly established law). For a right to be clearly established, "there does not have to be a prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law." Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1079 (5th Cir. 1995). Indeed, "the determination whether a right is 'clearly established' is a more particularized inquiry" that focuses on whether a reasonable official would know that the specific act in question was unlawful. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Plaintiffs allege here that the Defendants have violated their Fourth and Fourteenth Amendment rights. Specifically, the Plaintiffs assert that the Defendants falsely arrested him in violation of the Fourth Amendment's requirement of probable cause prior to search and seizure, and treated him differently due to animus.

First, we must determine whether the facts, as the Plaintiff alleges, establish that the officer violated a constitutional right. Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001). If no constitutional right has been violated, the inquiry ends and the defendants are entitled to qualified immunity. Id. However, if the plaintiff has alleged a constitutional violation, the Court must next determine whether the right was clearly established at the time of the alleged violation. Id.

A claim of unconstitutional false arrest requires a showing of no probable cause. Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001). The question presented here is whether probable cause existed to believe that Comer committed an offense. See Freeman v. County of Bexar, 210 F.3d 550, 553 (5th Cir. 2000). "The probable cause analysis only requires that we find a basis for an officer to believe to a 'fair probability' that a violation occurred." Piazza v. Mayne, 217 F.3d 239, 246 (5th Cir. 2000). The evidence known to both Lindley and Davis established probable cause as a matter of law. The Defendants were aware of, *inter alia*, the following pertinent facts:

1. Shelia Riekhof hired Danny Comer on or around May 21, 2003, to perform renovations on her home.

2. The original bid on the minor construction and refinishing was $12,235.

3. After Comer began work, Riekhof approached Comer about constructing an addition onto her home and doing other work than was originally noted in the bid agreement.

9

4. Riekhof claims that after several weeks of construction, she had a contractor, lawyer, and banker came by her home, all of which stated the work should be completed based on the time and money spent.

5. Specifically, Carlos White, a Starkville contractor came into Riekhof's home and told her that based on the amount of money she gave Comer that she had been scammed. Glenn Health, Fred Davis, and Empire Construction, all contractors themselves, inspected Riekhof's home and "laughed at" Comer's work.

6. Riekhof contends that throughout the construction, Danny Comer asked for money without presenting bills, and she paid him in good faith.

7. Riekhof asserts that sub-contractors began to come directly to her asking for money because Danny Comer was not paying them. Specifically, Riekhof alleges that Bobby Sorrells, a sub-contractor, threatened to bulldoze her home if she did not pay him money.

8. After ten weeks of construction, on August 6, 2003, Riekhof stopped the project.

9. When she halted work, Riekhof had paid out over $64,000 for the work on her home.

10. After the stop work order was issued, Riekhof felt that she had not gotten what she paid for and felt "scammed."

11. Riekhof contends that the district attorney told her to go to the police station.

12. Riekhof came into the police station and told Detective Keith Davis that Danny Comer was stealing from her and misappropriating her property.

13. Davis had Riekhof execute an affidavit regarding the misappropriation.

14. Keith Davis' investigation revealed that Riekhof gave Comer $2,200 for a down payment on cabinets that were never installed in Riekhof's home. Danny Comer told Riekhof that he had the cabinets at his home and that he would not install them until the majority of the work was completed.

15. Keith Davis contacted the cabinetmaker, Richard Vaden of West Point, who said that he had been contacted by Danny Comer regarding the cabinets, but was never hired or paid for the cabinets.

16. Davis also contacted some of the sub-contractors who also contended that they had not been paid by Comer for work performed at the Riekhof house.

17. After the completion of this initial investigation, Davis met with District Attorney Forrest Allgood who told Davis that there was enough evidence for a warrant.

18. Davis presented Riekhof's affidavit and the other evidence and facts he had gathered through his investigation to Justice Court Judge Bernard Crump.

19. Judge Crump found there was probable cause for the arrest of Danny Comer on the false pretense charge and signed his arrest warrant on August 14, 2003. In that warrant, Crump set Danny Comer's bail at $10,000.

20. On August 18, 2003, Danny Comer was arrested.

21. At an October 30, 2003, preliminary hearing, a municipal judge ordered the Starkville Police Department to turn over their reports and investigative files to Danny Comer. Acting on the advice of the district attorney's office, the police department refused. The judge dismissed the charges due to the police department's refusal to provide Danny Comer a copy of his file.

22. During Keith Davis' initial investigation, Davis reviewed the break down of costs given to Riekhof by Comer. Comer alleged he spent $1,599.93 on brick.

23. Davis contacted Columbus Brick from whom Comer bought the brick who noted that $250 would cover the costs and delivery of one thousand bricks. Based on Davis' calculations, Danny Comer would have allegedly bought six thousand bricks for the Riekhof addition.

24. Davis had brick sub-contractors look at the Riekhof home and they estimated that only approximately 3,177 bricks were used on that addition.

25. The district attorney's office felt the brick evidence was stronger than the $2,200 cabinet evidence against Danny Comer, so they instructed Keith Davis to present the case regarding the brick fraud to the grand jury.

26. On January 26, 2004, the grand jury returned an indictment against Danny Comer for "unlawfully, willfully, feloniously, designedly and fraudulently, with the intent to cheat and defraud, obtain from Shelia Riekof [sic] by color of a False Pretense; by falsely representing to said Shelia Riekof [sic] that he spent a certain amount of money on bricks for her house, and that he needed to be reimbursed for that amount of money, when in truth and in fact the said DANNY COMER had not spent that much money on bricks for her house. . . ."

"Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982) (citing Rodriguez v. Ritchey,

556 F.2d 1185 (5th Cir. 1977). Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim. Rodriguez, 556 F.2d at 1185; Simon v. United States, 644 F.2d 490 (5th Cir. 1981). Moreover, "if the facts supporting an arrest are put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment breaks the causal chain and insulates the initiating party." Rodriguez, 556 F.2d at 1193. Plaintiff has not articulated any pertinent facts that he believes were not presented to the justice court judge or the grand jury. In fact, Comer admits that David Lindley had nothing to do with the initial warrant the judge signed. As such, the judge's and grand jury's findings of probable cause break the chain of causation between the Plaintiff and Defendant.

Therefore, because Plaintiff has failed to make a sufficient showing to establish the existence of a lack of probable cause, his false arrest claim must be dismissed. Plaintiff has also failed to put forth any evidence of animus in contravention of the Fourteenth Amendment. Further, Plaintiff's conspiracy to falsely arrest claim must fail as well as there was no underlying crime about which to conspire.

Plaintiff additionally asserts an Eighth Amendment claim in relation to his contention that he was required to post cash bail instead of allowed to post Clay County property. Specifically, Plaintiff claims that David Lindley, as Starkville Police Chief, insisted on a cash surety to satisfy the bail established by Judge Crump. The arrest warrant signed by Justice Court Judge Crump is dated August 14, 2003.

It is settled law that for all claims brought under § 1983, federal courts borrow the general personal injury limitations period of the forum state. In Mississippi, that limitations period is three years. Miss. Code Ann. § 15-1-49(1). See Edwards v. Jasper County Youth Court, 94 Fed. Appx.

12

224, 224-25 (5th Cir. 2004) ("[T]he forum state's personal-injury statute of limitations should be applied to all 42 U.S.C. § 1983 claims. The district court did not err in applying Mississippi's three-year statute of limitations." (citing Wilson v. Garcia, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)); Knight v. Calhoun City, Miss., 273 F.3d 1104 (5th Cir. 2001) ("[T]here is no federal limitations period for 42 U.S.C. § 1983 actions; because there is no statute of limitations for 42 U.S.C. § 1983 actions, federal courts borrow the general personal injury limitations period of the forum state. The limitations period in Mississippi is three years." (citing Owens v. Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989)).

A cause of action for 42 U.S.C. § 1983 accrues when the plaintiff knows or has reason to know of the injury and its causation "that is, the connection between the injury and the defendant's actions." Piotrowski v. City of Houston, 512 F.3d 512, 516 (5th Cir. 1995). Comer's Eighth Amendment claim thus commenced the statute of limitations on August 18, 2003, the date of his arrest and notification that he would not be permitted to use the Clay County land as collateral. Plaintiff filed suit in November of 2006. More than three years elapsed between Plaintiff's injury and this suit. Therefore, to the extent Plaintiff is asserting these claims as federal claims under § 1983, Plaintiff's claims were not timely brought and are therefore dismissed on limitations grounds.

**State Law Claims**

Plaintiffs allege that the City of Starkville is statutorily liable for the acts and omissions of David Lindley under Mississippi Code Section 19-25-19. After reviewing this statutory provision, the Court is convinced that the facts of this case do not fit under Mississippi Code Section 19-25-19. That statute governs the appointment, oath and compensation of deputy sheriffs. As Plaintiff has

13

only alleged causes of action against the City of Starkville and the Chief of Police, this section does not provide any relief to the Plaintiff.

Plaintiffs also assert a cause of action for malicious prosecution and loss of consortium. In Mississippi, the elements of malicious prosecution are: (1) the institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; (6) the suffering of injury or damage as a result of the prosecution. Edmonds v. Ben. Miss., Inc., 212 Fed. Appx. 334, 337 (5th Cir. 2007) (citing McClinton v. Delta Pride Catfish, Inc., 792 So. 2d 968, 973 (Miss. 2001)). The plaintiff bears the burden of proving each of these elements by a preponderance of the evidence. Id. As noted above, Plaintiff cannot prove that there was a lack of probable cause against him for the crime of false pretense. Accordingly, his claim for malicious prosecution is summarily dismissed.

Alternatively, because the state law claims are only brought against the City of Starkville and David Lindley, in his official capacity, the Mississippi Tort Claims Act is implicated. Through the MTCA, Mississippi waived its immunity in a limited fashion for certain tort actions. Univ. of Mississippi Medical Center v. Robinson, 876 So. 2d 337, 339 (Miss. 2004). By definition, the MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability. Miss. Code Ann. § 11-46-7(1); Elkins v. McKenzie, 865 So. 2d 1065, 1078 (Miss. 2003) (internal citations omitted); L.W. v. McComb Separate Municipal School District, 754 So. 2d 1136, 1138 (Miss. 1999); Moore v. Carroll County, Mississippi, 960 F. Supp. 1084, 1088 (N.D. Miss. 1997). Defendants contend that under

Mississippi Code Section 11-46-9(1)(c), the City of Starkville and David Lindley, in his official capacity, are entitled to immunity. That Code Section provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11-46-9(1)(c).

Plaintiff does not contend that Lindley's actions in this case were unrelated to his official actions or duties; he merely asserts that Lindley acted in reckless disregard of his rights. Specifically, Plaintiff alleges that the following actions constitute reckless disregard: (1) Chief Lindley ordered that charges be brought against the Plaintiff without the benefit of a thorough, or even perfunctory, investigation; (2) Chief Lindley pushed the case to the grand jury for indictment; (3) Chief Lindley refused to allow Plaintiff to use land outside of Oktibbeha County as collateral for his indictment; (4) Chief Lindley ordered yellow crime tape to be placed around Riekhof's house; (5) Chief Lindley caused Plaintiff to be arrested on Friday afternoon, virtually guaranteeing that Comer would spend most, if not all, of his weekend in jail; and (6) Chief Lindley's refusal to allow the municipal court prosecutor to provide a copy of the police's investigative file to Danny Comer violated his constitutional rights.

Reckless disregard has been described by the Mississippi Supreme Court as "a higher standard than gross negligence" and embracing "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Collins v. Tallahatchie County, 876 So. 2d 284, 287 (Miss. 2004); Turner v. City of Ruleville, 735 So. 2d 226, 230 (Miss. 1999). Therefore, to

recover under the Mississippi Tort Claims Act, the Plaintiff must prove that David Lindley, as Chief of Police of the City of Starkville, acted in reckless disregard of his safety and well-being such that Lindley's conduct was wanton and willful. Otherwise, immunity will lie for negligence. Turner, 735 So. 2d at 229.

The Plaintiff has asserted no evidence other than conclusory allegations that David Lindley was responsible for his prosecution. The facts, as outlined above in the facts section and probable cause analysis connote that David Lindley did not act in reckless disregard of Danny Comer's rights. Thus, Lindley is entitled to the immunity provided by the Mississippi Tort Claims Act.

The Court notes that Kathy Comer has failed to strictly comply with the Mississippi Tort Claims Act in prosecution of her loss of consortium claim. Miss. Code Ann. § 11-46-1, *et seq*. Based on the record, the Plaintiffs have not complied with the Notice of Claim Requirements of the Act as to Kathy Comer's claim.

The Mississippi Tort Claims Act requires that the notice of claim be filed ninety days prior to instituting a civil action thereon. Miss. Code Ann. § 11-46-11(1). The Mississippi Supreme Court requires strict compliance to the 90-day notice requirement. South Regional Medical Center v. Guffy, 930 So. 2d 1252, 1258-59 (Miss. 2006); University of Mississippi Medical Center v. Easterling, 928 So. 2d 815 (Miss. 2006). In both Guffy and Easterling, the Mississippi Supreme Court dismissed the plaintiff's claims for failure to comply strictly with the 90-day notice requirement.

The Comers' attorney sent a notice of claim letter on August 16, 2006, and the Comers filed suit on November 2, 2006. Only seventy-eight days elapsed between the "notice" and the suit being

16

filed. Thus, Kathy Comer has failed to comply with the 90-day notice requirement, and her state law tort claims of loss of consortium must be dismissed.

Therefore, Kathy Comer's claim of loss of consortium fails as violative of the Mississippi Tort Claims Act. The Court notes here that even if the claim was not dismissed procedurally, Kathy Comer's claim would fail substantively as Danny Comer has failed to put forth any evidence for the malicious prosecution claim, and a loss of consortium claim is derivative of a successful cause of action of the spouse. Miss. Code Ann. § 93-3-1.

*Conclusion*

Plaintiffs have failed to raise genuine issues of material fact as to either their federal or state law claims. As such, the Defendants' Motion for Summary Judgment is granted, and this case is closed.

A separate order shall issue forthwith this day.

SO ORDERED, this the __7th__ day of July, 2008.

                 **/s/ Sharion Aycock**
                 **U.S. DISTRICT JUDGE**